UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:18-cv-03017

FRED NEKOUEE, individually,                :
                                            :
            Plaintiff,                      :
                                            :
vs.                                         :
                                            :
MIKI LLC, a Colorado limited liability      :
company;                                    :
            Defendant.                      :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, MIKI LLC, a Colorado limited liability company (sometimes referred to as

"Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to

the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant's property, a Travelodge hotel, is located at 3820 Highway 119,

Longmont, Colorado 80501, in Weld County, Colorado ("Travelodge").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district

of the situs of the property.   The Defendant's property is located in and does business within this

judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Travelodge which forms the basis of this lawsuit on July 31, 2018 and August 1, 2018, and he bought goods and sought to avail himself of the services at Travelodge on such dates.

8.      Fred Nekouee visited the Longmont area near the Travelodge again on October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

9.      Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

10.      The Plaintiff has definite plans to return to the Longmont area and to the Travelodge in January of 2018.

11.      Travelodge is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

12.      The Plaintiff likes to stay at moderately-priced hotels that are a chain like Travelodge.

13.     The Plaintiff plans to return to Travelodge again.

14.     For the reasons set forth in paragraphs 6-13 and 26, Fred Nekouee plans to return to the Travelodge.

15.     The Plaintiff has encountered architectural barriers at the subject property.

16.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in Travelodge.

17.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20.     On his visit to the Travelodge, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walkways.

21.     The Plaintiff encountered and observed barriers to access in the accessible guest restroom and in the restroom in the pool area at the Travelodge.

22.     The Plaintiff is deterred from visiting the Travelodge because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant is responsible

for complying with the obligations of the ADA.

24.     The place of public accommodation that the Defendant owns, operates, leases or leases to is the Travelodge.

25.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 29 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

26.     Fred Nekouee desires to visit the Travelodge not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

27.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

28.     The Defendant has discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

29.     Preliminary inspections of the Travelodge have shown that violations exist.   The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.  As shown in the photograph below, the accessible parking space for disabled patrons in the back of the Travelodge does not have signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   The Plaintiff observed this lack of signage, and it made it difficult to find a parking space that is designated for disabled individuals.



b.   The accessible parking space in the back of the Travelodge contains a change in level of about 0.75 of an inch, which change in level is greater than the maximum allowed change in level of 0.25 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   The Plaintiff encountered this change of level while moving in his wheelchair, and he required assistance to move his wheelchair over this change of level.

c.  As shown in the photograph below, in the parking lot, the front section of the accessible parking space nearest the building has a running slope as steep as about 1:4.1

(24.6%), which slope is dangerously steeper than the maximum allowed slope of 1:48

(2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this

dangerous slope, and it made it difficult for him to unload from his vehicle.



    d.   In the parking lot, the front section of the parking space for disabled patrons with

van access has a running slope as steep as about 1:4.8 (20.8%), which slope is steeper than

the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §

502.4.   The Plaintiff observed the slope in the front section of this parking space, and it

deters him from visiting Travelodge.

    e.   The cross slope of the walking surface towards the ramp in front of the Travelodge

is as steep as about 1:22.7 (4.4%), which slope is steeper than the maximum allowed slope

of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff

encountered this steep slope while moving in his wheelchair, and it made him unstable in his wheelchair.

f.    The cross slope of the walking surface from the access aisle towards the hotel entrance door is as steep as about 1:15.2 (6.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this steep slope while moving in his wheelchair, and it made him unstable in his wheelchair.

g.   The cross slope of the walking surface towards the back entrance door to the Travelodge is as steep as about 1:15.2 (6.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this steep cross slope while moving in his wheelchair, and this cross slope made him unstable in his wheelchair on this walking surface.

h.    The cross slope of the walking surface towards the ramp to the side entrance door of the Travelodge is as steep as about 1:23.8 (4.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal law 2010, ADAAG § 404.3. The Plaintiff encountered this steep cross slope while moving in his wheelchair, and this cross slope made him unstable in his wheelchair on this walking surface.

i.    The running slope of the accessibility ramp towards the side entrance door of the Travelodge is as steep as about 1:7.5 (13.3%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this running slope while moving in his wheelchair, and he required assistance to ascend this ramp in his wheelchair.

j.    As shown in the pictures below, the running slope of the accessibility ramp is as

steep as about 1:9.6 (10.4%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff encountered this running slope while moving in his wheelchair, and he required assistance to ascend this ramp in his wheelchair.





k.   The slope of the accessibility curb ramp side or flare is as steep as about 1:6.8 (14.8%), which slope is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff observed this condition.

l.   The parallel ramp landing in the back of the Travelodge has a slope as steep as 1:16.7 (6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff encountered this slope in his wheelchair, and it made him unstable while moving in his wheelchair.

m.   The ramp landing in the front of the Travelodge has a slope as steep as 1:33.3 (3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff encountered this slope in his

wheelchair, and it made him unstable while moving in his wheelchair.

n.   The accessible ramp in the front of the Travelodge projects into the parking access aisle and does not have a proper landing, in violation of Federal Law 2010, ADAAG §§ 406.5 and 502.4.   The Plaintiff encountered this dangerous condition.

o.   The slope of the surface within the entrance door required maneuvering space of 60 inches is as steep as about 1:18.9 (5.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%) within the door maneuvering space, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   In his wheelchair, the Plaintiff encountered this condition, and it caused him to slip sideways in his wheelchair while trying to enter Travelodge.

**ENTRANCE DOOR, INTERIOR LOBBY AREA AND COUNTER**

p.   The force needed to open the entrance door to Travelodge is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff encountered this condition, and due to the force necessary to open the door, he could not open this door by himself.

q.   The lobby door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 10 inches and less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG 404.2.4.    In his wheelchair, the Plaintiff encountered this maneuvering clearance space, and partly as a result of this lack of clearance space, he required assistance to enter the Travelodge.

r.   The counter tops throughout the lobby are 45 inches above the finish floor, which height is higher than the maximum allowed height of 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   In his wheelchair, the tops of these

counters were not accessible to the Plaintiff.

**INTERIOR BREAKFST AREA**

s.   The juice machine dispenser key in the breakfast area is about 53 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff could not reach this juice machine dispenser key from his wheelchair.

t.   The hot water machine dispenser lever in the breakfast area is about 55 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   The Plaintiff could not reach this hot water machine dispenser lever from his wheelchair.

u.   The fork and spoon holder in the breakfast area is about 60 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor when the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. The Plaintiff tried but could not reach the utensils in this holder from his wheelchair.

**ACCESSIBLE GUESTROOM #101**

v.   The entrance door pull side maneuvering clearance in a front approach and perpendicular to the doorway to accessible guestroom #101 is about 42 inches and less than the minimum required clearance space of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff encountered this maneuvering clearance space, and as a result of the lack of maneuvering space he required assistance to enter the room.

w.   Inside accessible guestroom #101, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with latch and closer is about 2.5 inches and less than the required minimum clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, as a result of this lack of maneuvering clearance space, the Plaintiff required assistance to exit the room.

x.   In accessible guestroom #101, to open the refrigerator door requires tight grasping and pinching, in violation of Federal Law 2010, ADAAG § 309.4.   The Plaintiff required assistance to open this refrigerator door as a result of this condition.

y.   In accessible guestroom #101, the microwave control requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   Due to such nature of this control, the Plaintiff required assistance to use the microwave.

z.   In accessible guestroom #101, the controls for the air conditioning unit require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   As a result of the type of these controls, the Plaintiff required assistance to set the air conditioner to make the room comfortable.

aa.   In accessible guestroom #101, the lock/handle of the patio door requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 609.4 and 309.4.   The Plaintiff observed this condition.

bb.   In accessible guestroom #101, the clear floor or ground space needed to open the refrigerator is about 24 inches and less than the minimum required clear space of 30 inches, in violation of Federal Law 2010, ADAAG § 305.   The Plaintiff encountered this condition.

cc.   In accessible guestroom #101, the hook/hangar is higher than 48 inches above the

finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   From his wheelchair, the Plaintiff was not able to reach the hangars.

dd.   In accessible guestroom #101, the curtain rod to open and close the curtains is about 56 inches above the finish floor and higher than the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. From his wheelchair, the Plaintiff could not reach this curtain rod.

ee.   In accessible guestroom #101, the turning space width outside the restroom is about 32 inches and less than the minimum diameter of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG §§ 304.3.1 and 304.3.2.   As a result of this small turning space, the Plaintiff had difficulty entering the restroom in his wheelchair.

**ACCESSIBLE GUEST RESTROOM**

ff.   In the accessible guest restroom #101, the grab bar end distance from the head end wall is about 18 inches and more than the maximum allowed distance of 15 inches (380 mm), in violation of Federal Law 2010, ADAAG § 607.4.1.1.   As a result of this condition, the Plaintiff had difficulty using the bathtub.

gg.   In the accessible guest restroom #101, the shower spray head is about 65 inches above the floor of the bathtub and higher than 48 inches above the floor, and adjusting the shower head level requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2.   Due to these conditions, the Plaintiff could not reach or adjust this shower spray head.

hh.   In the accessible guest restroom, the rear wall grab bar only extends 16 inches on one side and 20 inches on the other side of the centerline of the water closet and not a minimum of 12 inches on one side and 24 inches on the other side, in violation of Federal

Law 2010, ADAAG § 604.5.2.   The Plaintiff used this rear wall grab bar, and as a result of its location, he had difficulty transferring himself from his wheelchair to the water closet.

ii.   In the accessible guest restroom #101, the rear wall grab bar is only 32 inches long and is less than the required minimum of 36 inches along, in violation of Federal Law 2010, ADAAG § 604.5.2.   The Plaintiff used this rear wall grab bar, and due to its lack of required length, he had difficulty transferring himself from his wheelchair to the water closet.

jj.   In the accessible guest restroom #101, the space between the rear wall grab bar and the top of the water closet or toilet tank is less than a minimum of 1.5 inches, in violation of Federal Law 2010, ADAAG §§ 604 and 609.3.   As a result of this lack of space between the bottom of the grab bar and the top of the toilet tank, the Plaintiff had great difficulty transferring himself from his wheelchair to the toilet using this grab bar.

kk.   In the accessible guest restroom #101, the lavatory pipes under the sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   The Plaintiff used this sink and risked skin burns and injury to his legs due to the lack of insulation on such pipes.

ll.   In the accessible guest restroom #101, the space between the top of the side wall grab bar and the phone is about 3 inches and less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   As a result of the location of the phone, the Plaintiff had great difficulty using the side wall grab bar to help him transfer to the toilet from his wheelchair and from the toilet to his wheelchair.

mm.   In the accessible guest restroom #101, the centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front

of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   Due to the location of this toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

nn.   The coat hook in the accessible guest restroom #101 is about 68 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAG § 603.4.   Due to its height above the floor, the Plaintiff could not use this coat hook from his wheelchair.

oo.   In the accessible guest restroom #101, the hairdryer is installed higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   From his wheelchair, the Plaintiff could not reach the hairdryer to use it.

**POOL**

pp.   The cross slope of the walking surface around the pool is as steep as about 1:19.6 (5.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this slope while moving in his wheelchair, and it made him unstable in his wheelchair.

**POOL RESTROOM**

qq.   In the pool restroom, a shower spray with a hose that can be used as both a fixed-position shower head and as a hand-held shower spray is not provided, in violation of Federal Law 2010, ADAAG § 607.6.   The Plaintiff observed this condition.

rr.   In the pool restroom, the roll-in type shower clearance width is about 30 inches and less than the minimum required inside clearance width of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG § 608.2.3.   The Plaintiff observed this condition.

ss.   In the pool restroom, the shower does not have grab bars or a seat, in violation of

Federal Law 2010, ADAAG § 608.3.2.   The Plaintiff observed these conditions.

tt.   In the pool restroom, the threshold to the shower compartment is about 3 inches high and higher than the maximum allowed height of 0.5 of an inch, in violation of Federal Law 2010, ADAAG §§ 303 and 608.7.   The Plaintiff observed this threshold, and it deters him from staying at the Travelodge.

uu.   In the pool restroom, the rear wall grab bar is only 24 inches long and less than the required minimum length of 36 inches, in violation of Federal Law 2010, ADAAG § 604.5.2.   The Plaintiff observed this short rear wall grab bar, and it deters him from staying at the Travelodge.

vv.   In the pool restroom, the side wall grab bar is only about 32 inches long and less than the required minimum length of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff observed this short side wall grab bar, and it deters him from staying at the Travelodge.

ww.   In the pool restroom, the side wall grab bar only extends about 32 inches from the rear wall and not the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff observed this condition, and it deters him from staying at the Travelodge.

xx.   In the pool restroom, the space between the rear wall grab bar and the top of the water closet tank is less than a minimum of 1.5 inches, in violation of Federal Law 2010, ADAAG §§ 604 and 609.3.   The Plaintiff observed this condition, and it deters him from staying at the Travelodge.

yy.   As shown in the photograph below, the lavatory pipes under the sink in the pool restroom are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.

The Plaintiff used this sink and due to the lack of insulation on the pipes, he was at risk of skin burns and injury to his legs.



zz.    In the pool restroom, the paper towel dispenser outlet is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 604.2 and 604.7. Due to the height of its outlet, the Plaintiff was unable to use this paper towel dispenser.

aaa.      In the pool restroom, the centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.  The Plaintiff observed this condition, and it deters him from staying at the Travelodge.

bbb.      In the pool restroom, the door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 34 inches and less than the required minimum clearance of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.

The Plaintiff encountered this barrier to access, and it deters him from staying at the Travelodge.

ccc.       In the pool restroom, the toilet seat cover dispenser outlet is about 59 inches above the finish floor and not within the allowed maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff observed this condition, and it deters him from staying at the Travelodge.

ddd.        In the pool restroom, the bottom edge of the mirror's reflecting surface is about 45 inches above the finish floor and higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   In his wheelchair, the Plaintiff used this mirror and he could not see his full face in it.

eee.       In the pool restroom, the door hardware lock requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff tried but could not open or close this lock with a closed fist or loose grip.

fff.    In the pool restroom, the coat hooks are installed at about 64 inches above the finish floor and higher than the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed these high coat hooks, and this condition deters him from staying at the Travelodge.

**VENDING AREA**

ggg.       The snack vending machine keys are higher than the maximum allowed reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   From his wheelchair, the Plaintiff tried, but due to the height of the keys, he could not use the keys to this vending machine to obtain a snack.

30.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

31.     The discriminatory violations described in paragraph 29 are not an exclusive list of the Defendant' ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

32.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

33.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with

disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

34.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

35.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

36.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

37.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

38.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Travelodge and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable

under Title III of the Americans with Disabilities Act.

## **<u>DESIGNATION OF PLACE OF TRIAL</u>**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates

Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net
*Attorney for Plaintiff Fred Nekouee*